**SEP 1 7 2021**

MARY C. LOEWENGUTH, CLERK
WESTERN DISTRICT OF NY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

JUSTIN H.,

                Plaintiff,

    -v-

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

20-CV-00600-MJR
DECISION AND ORDER

---

Pursuant to 28 U.S.C. §636(c), the parties consented to have a United States Magistrate Judge conduct all proceedings in this case. (Dkt. No. 16)

Plaintiff Justin H.[1] ("Plaintiff") brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "defendant") denying his application for Supplemental Security Income ("SSI") pursuant to the Social Security Act (the "Act"). Both parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the following reasons, Plaintiff's motion (Dkt. No. 12) is granted, defendant's motion (Dkt. No. 13) is denied, and the case is remanded for further administrative proceedings.

---

[1] In accordance with the District's November 18, 2020, Standing Order, plaintiff is identified by first name and last initial.

## BACKGROUND[2]

Plaintiff filed protectively for SSI on October 14, 2016, alleging a disability onset date of December 31, 2014.  (Administrative Transcript ["Tr."] 137-43).  The application was initially denied on March 15, 2017. (Tr. 75-81).  Plaintiff timely filed a request for an administrative hearing. (Tr. 84-101).  On December 28, 2018, Administrative Law Judge ("ALJ") William M. Weir held a hearing in Buffalo, New York.  (Tr. 32-62).  Plaintiff appeared at the hearing with his attorney.  A vocational expert also testified.  The ALJ issued a decision finding Plaintiff not disabled on March 15, 2019.  (Tr. 12-31).  On April 14, 2020, the Appeals Council denied Plaintiff's request for review.  (Tr. 1-6).  This action followed.

## DISCUSSION

I.   *Scope of Judicial Review*

The Court's review of the Commissioner's decision is deferential.  Under the Act, the Commissioner's factual determinations "shall be conclusive" so long as they are "supported by substantial evidence," 42 U.S.C. §405(g), that is, supported by "such relevant evidence as a reasonable mind might accept as adequate to support [the] conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted).  "The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from the facts."  *Smith v. Colvin*, 17 F. Supp. 3d 260, 264 (W.D.N.Y. 2014).  "Where the Commissioner's decision

---

[2] The Court presumes the parties' familiarity with Plaintiff's medical history, which is summarized in the moving papers.

rests on adequate findings supported by evidence having rational probative force," the Court may "not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002). Thus, the Court's task is to ask "'whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached' by the Commissioner." *Silvers v. Colvin*, 67 F. Supp. 3d 570, 574 (W.D.N.Y. 2014) (quoting *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)).

Two related rules follow from the Act's standard of review. The first is that "[i]t is the function of the [Commissioner], not [the Court], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983). The second rule is that "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve." *Veino*, 312 F.3d at 588. While the applicable standard of review is deferential, this does not mean that the Commissioner's decision is presumptively correct. The Commissioner's decision is, as described above, subject to remand or reversal if the factual conclusions on which it is based are not supported by substantial evidence. Further, the Commissioner's factual conclusions must be applied to the correct legal standard. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008). Failure to apply the correct legal standard is reversible error. *Id.*

II.    *Standards for Determining "Disability" Under the Act*

A "disability" is an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A). The Commissioner may find the claimant disabled "only if his physical or mental impairment

or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." *Id.* §§423(d)(2)(A), 1382c(a)(3)(B). The Commissioner must make these determinations based on "objective medical facts, diagnoses or medical opinions based on these facts, subjective evidence of pain or disability, and . . . [the claimant's] educational background, age, and work experience." *Dumas v. Schweiker*, 712 F.2d 1545, 1550 (2d Cir. 1983) (first alteration in original) (quoting *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)).

To guide the assessment of whether a claimant is disabled, the Commissioner has promulgated a "five-step sequential evaluation process." 20 C.F.R. §§404.1520(a)(4), 416.920(a)(4). First, the Commissioner determines whether the claimant is "working" and whether that work "is substantial gainful activity." *Id.* §§404.1520(b), 416.920(b). If the claimant is engaged in substantial gainful activity, the claimant is "not disabled regardless of [his or her] medical condition or . . . age, education, and work experience." *Id.* §§404.1520(b), 416.920(b). Second, if the claimant is not engaged in substantial gainful activity, the Commissioner asks whether the claimant has a "severe impairment." *Id.* §§404.1520(c), 416.920(c). To make this determination, the Commissioner asks whether the claimant has "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* §§404.1520(c), 416.920(c). As with the first step, if the claimant does not have a severe impairment, he or she is not disabled regardless of any other factors or considerations. *Id.*

§§404.1520(c), 416.920(c).   Third, if the claimant does have a severe impairment, the Commissioner asks two additional questions:  first, whether that severe impairment meets the Act's duration requirement, and second, whether the severe impairment is either listed in Appendix 1 of the Commissioner's regulations or is "equal to" an impairment listed in Appendix 1.   *Id.* §§404.1520(d), 416.920(d).   If the claimant satisfies both requirements of step three, the Commissioner will find that he or she is disabled without regard to his or her age, education, and work experience.  *Id.* §§404.1520(d), 416.920(d).

If the claimant does not have the severe impairment required by step three, the Commissioner's analysis proceeds to steps four and five.   Before doing so, the Commissioner must "assess and make a finding about [the claimant's] residual functional capacity ["RFC"] based on all the relevant medical and other evidence" in the record.  *Id.* §§404.1520(e), 416.920(e).   RFC "is the most [the claimant] can still do despite [his or her] limitations."  *Id.* §§404.1545(a)(1), 416.945(a)(1).   The Commissioner's assessment of the claimant's RFC is then applied at steps four and five.   At step four, the Commissioner "compare[s] [the] residual functional capacity assessment . . . with the physical and mental demands of [the claimant's] past relevant work."  *Id.* §§404.1520(f), 416.920(f).  If, based on that comparison, the claimant is able to perform his or her past relevant work, the Commissioner will find that the claimant is not disabled within the meaning of the Act.  *Id.* §§404.1520(f), 416.920(f).  Finally, if the claimant cannot perform his or her past relevant work or does not have any past relevant work, then at the fifth step the Commissioner considers whether, based on the claimant's RFC, age, education, and work experience, the claimant "can make an adjustment to other work."   *Id.* §§404.1520(g)(1), 416.920(g)(1).  If the claimant can adjust to other work, he or she is

not disabled. *Id.* §§404.1520(g)(1), 416.920(g)(1). If, however, the claimant cannot adjust to other work, he or she is disabled within the meaning of the Act. *Id.* §§404.1520(g)(1), 416.920(g)(1).

The burden through steps one through four described above rests on the claimant. If the claimant carries his burden through the first four steps, "the burden then shifts to the [Commissioner] to show there is other gainful work in the national economy which the claimant could perform." *Carroll*, 705 F.2d at 642.

III.    *The ALJ's Decision*

At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since October 14, 2016, the application date. (Tr. 17). At step two, the ALJ found that Plaintiff had the following severe impairments: schizophrenia and a learning disorder. (Tr. 17-18). At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 18-19). Prior to proceeding to step four, the ALJ determined that Plaintiff retained the RFC to perform:

> [M]edium work . . . except the claimant can perform simple, repetitive one and two step tasks. The claimant should perform work where language, math, and reasoning are level 1. The claimant could have no more than fleeting public contact; however, he could occasionally interact with coworkers and supervisors.

(Tr. 19-25). At step four, the ALJ found that Plaintiff has no past relevant work. (Tr. 25). At step five, the ALJ found Plaintiff capable of performing jobs that exist in significant numbers in the national economy. (Tr. 26). Accordingly, the ALJ determined that Plaintiff has not been under a disability from October 14, 2016, the date the application was filed. (Tr. 27).

IV.   *Plaintiff's Challenge*

Plaintiff argues that the ALJ failed to evaluate properly the treating opinion of his therapist, Licensed Master Social Worker Jillian Wagner, and that the case must therefore be remanded.  The Court agrees.

On November 26, 2018, LMSW Wagner completed a mental residual functional capacity questionnaire. (Tr. 813-25). She stated Plaintiff started care on August 18 and continued to be seen weekly for individual therapy. (Tr. 813). His diagnosis was schizophrenia, and his medications were Trazadone, Zoloft, and Ziprasidone. (Tr. 813, 814). During a mental status examination conducted on October 9, 2018, he had auditory hallucinations and fair insight and judgment.   (Tr. 815, 816). Plaintiff's signs and symptoms included: impairments in impulse control; mood disturbance; pathological dependence, passivity or aggressivity; paranoid thinking or inappropriate suspiciousness; psychological or behavioral abnormalities associated with a dysfunction of the brain with a specific organic factor judged to be etiologically related to the abnormal mental state and loss of previously acquired functional abilities; intense and unstable interpersonal relationships and impulsive and damaging behavior; perceptual or thinking disturbances; hallucinations or delusions; flight of ideas; inflated self-esteem; easy distractibility; and oddities of thought, perception, speech or behavior.  (Tr. 822).

LMSW Wagner opined Plaintiff was unable to meet competitive standards with his ability to: maintain attention for two hour segment; maintain regular attendance and be punctual within customary, usually strict tolerances; work in coordination with or proximity to others without being unduly distracted; make simple work-related decisions; complete a normal workday and workweek without interruptions from psychologically based

symptoms; accept instructions and respond appropriately to criticism from supervisors; get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes; respond appropriately to changes in a routine work setting; understand and remember detailed instructions; carry out detailed instructions; set realistic goals or make plans independently of others; deal with stress of semiskilled and skilled work; interact appropriately with the general public; and maintain socially appropriate behavior. (Tr. 823-824). LMSW Wagner explained:

> Justin would likely be unable to meet competitive standards in most areas. He is often easily distracted in our counseling appointments. Justin struggled with mood lability, anger + interpersonal relationships. He was placed on a behavior contract through BFNC for not following rules + instructions. Justin struggles with boundaries as well which would impact his ability to work. Justin doesn't take feedback well, mainly due to symptoms of paranoia.

(Tr. 823). She also explained Plaintiff had difficulty remembering appointment days and times, presented with unrealistic goals, and had difficulty maintaining average stress and implementing coping skills. (Tr. 824). She further explained:

> Justin struggles with keeping healthy boundaries with others, including clients and staff @ Horizon. His MH diagnosis impacts his ability to interact appropriately @ times. Justin utilizes public transportation however has difficulty traveling to new places. Justin's reading skills are poor + he had difficulty understanding + retaining information.

(Tr. 824). LMSW Wagner opined Plaintiff's impairments or treatment would cause him to be absent from work about four days per month. (Tr. 825). She indicated his impairments were reasonably consistent with the symptoms and functional limitations described in the questionnaire. (Tr. 825). She lastly opined that Plaintiff was unable to engage in full-time competitive employment on a sustained basis. (Tr. 825).

"[O]pinions from medical sources such as Licensed Clinical Social Workers and Nurse Practitioners are 'important and should be evaluated on key issues such as . . .

functional effects [of an impairment].'" *See Matthews v. Comm'r of Soc. Sec.*, 2018 WL 4356495, at *5 (W.D.N.Y. Sept. 21, 2018) (quoting *Anderson v. Astrue*, 2009 WL 2824584, at *9 (E.D.N.Y. Aug. 28, 2009)). *See also Hunt v. Comm'r of Soc. Sec.*, 2017 WL 1370996, at *3 (W.D.N.Y. Apr. 17, 2017) (finding it is well settled that opinions from "other sources" are "important" and "should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file"). "Notably, this is even more relevant within the context of 'mental disabilities, which by their nature are best diagnosed over time.'" *Matthews*, 2018 WL 4356495, at *5 (quoting *Santiago v. Barnhart*, 441 F. Supp. 2d 620, 629 (S.D.N.Y. 2006)). An ALJ is required to weigh opinions from "other sources" based on the five factors set out in the Social Security regulations: (1) the frequency of examination and the length, nature, and extent of the treatment relationship; (2) the evidence in support of the physician's opinion; (3) the consistency of the opinion with the record as a whole; (4) whether the opinion is from a specialist; and (5) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion. *See* 20 C.F.R. § 416.927(c).

While an "other source" opinion is not treated with the same deference as a treating physician opinion, the assessment is still entitled to some weight, especially when there is a treatment relationship with the claimant. *See Pogozelski v. Barnhart*, 2004 WL 1146059, at *12 (E.D.N.Y. May 19, 2004) (citing *Mejia v. Barnhart*, 261 F.Supp.2d 142, 148 (E.D.N.Y. 2003)) (finding that "some weight should still have been accorded to [the treating other source's] opinion based on his familiarity and treating relationship with the claimant"). While an ALJ may reject the opinion of a treating other source when it is inconsistent with the claimant's treatment records, he or she is still required to consider

the opinion and apply the same factors as used for the evaluation of the opinions from "acceptable medical sources" set forth in 20 C.F.R. §404.1527(c). *See Matthews*, 2018 WL 4356495, at *5 (quotations and citations omitted).

Here, the ALJ afforded LMSW Wagner's opinion only partial weight. (Tr. 24). He stated that he did so for three reasons: (1) LMSW Wagner had treated Plaintiff for less than one year; (2) her mental status examinations of Plaintiff were "predominately unremarkable;" and (3) the limitations she suggested were in excess of Plaintiff's activities of daily living and independence. The Court finds that these reasons were not sufficient, at least as stated, to support the ALJ's decision. (Tr. 24).

LMSW Wagner was the only treating provider that provided a comprehensive evaluation of Plaintiff's work-related functional limitations during the relevant period. As such, her opinion was generally entitled to at least some, if not more, consideration. *See Mebane v. Comm'r of Soc. Sec.*, 2016 WL 519038, at *6 (W.D.N.Y. Feb. 10, 2016) ("[H]ere, NP Alescio's opinion was the only opinion, from a longitudinal treating source, regarding plaintiff's work-related functional limitations . . . Under these circumstances, NP Alescio's opinion is entitled to greater consideration"). The ALJ offered no reasons as to why the time period of treatment by LMSW Wagner would be inadequate to support her opinion.

Further, while the ALJ was permitted to consider Plaintiff's activities of daily living when evaluating the opinion evidence of record, he was still required to explain how performance of such activities undermined LMSW Wagner's opinion and instead demonstrated that Plaintiff was capable of performing substantial gainful work in a competitive work environment. *See Miller v. Colvin*, 122 F. Supp. 3d 23, 29 (W.D.N.Y.

2015) (citations omitted) (finding the ALJ erred by failing to explain how the plaintiff's limited activities of daily living translated into the ability to perform substantial gainful work in a typical competitive workplace environment). Plaintiff's ability to independently live in an apartment and take care of it, go to a store, and use public transportation are basic adaptive activities. *Id.* (quoting *Farina v. Colvin*, 2015 WL 235858, at *9 (N.D.N.Y. Jan. 15, 2015) ("'[A]ctivities of daily living', . . . generally include 'adaptive activities such as cleaning, shopping, cooking, taking public transportation, paying bills, maintaining a residence, [and] caring appropriately for your grooming and hygiene . . .'") (internal quotation omitted). The ALJ failed to explain how these limited activities meant Plaintiff could meet the mental demands of full-time competitive work. This was erroneous. *See Miller*, 122 F. Supp. 3d at 29-30.

Also, the alleged inconsistencies between LMSW Wagner's opinion and Plaintiff's ability to live independently in an apartment and take care of it, go to a store, and use public transportation are unclear from the ALJ's decision. LMSW Wagner never indicated Plaintiff was unable to perform these limited activities. (Tr. 823-24). She specifically explained that although Plaintiff utilized public transportation, he had difficulty traveling to new places. (Tr. 824). In addition, the activities cited as support by the ALJ do not appear to be probative of Plaintiff's abilities to maintain attention and concentration, maintain regular attendance and complete a normal workday and workweek with interruptions, interact appropriately with supervisors and coworkers, respond appropriately to changes in a routine work setting, deal with work, and maintain socially appropriate behavior – all of which were assessed by LMSW Wagner and accounted for a majority of her opined limitations. (Tr. 823-24). As such, Plaintiff's "ability to perform [those] basic activities . . .

'do not by themselves contradict'" LMSW Wagner's opined limitations because, as "stated on numerous occasions [,] . . . 'a claimant need not be an invalid to be found disabled' under the Social Security Act." *See Miller*, 122 F. Supp. 3d at 29 (quoting *McGregor v. Astrue*, 993 F.Supp.2d 130, 142 (N.D.N.Y. 2012); *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998)) (internal quotations omitted). *See also Harsh v. Colvin*, 2014 WL 4199234, at *4 (N.D.N.Y. Aug. 22, 2014) (citing *George v. Colvin*, 2014 WL 652930, at *6 (N.D.N.Y. Feb. 19, 2014); *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012)) (finding the ALJ erred by placing undue emphasis on of the claimant's ability to perform daily activities to infer "an ability to handle the stress demands of competitive, remunerative employment on a sustained basis from the ability to perform very basic activities of daily living.").

Lastly, the ALJ's assertion that LMSW Wagner's opinion is inconsistent with her mental status examinations of the Plaintiff is insufficient as stated, as he failed to provide any citations to the record in support of his assertion, which was erroneous. *See Robinson v. Berryhill*, 2019 WL 2453346, at *9 (S.D.N.Y. Jan. 25, 2019) (citations omitted), *report and recommendation adopted sub nom. Robinson v. Comm'r of Soc. Sec.*, 2019 WL 1004140 (S.D.N.Y. Feb. 28, 2019) (finding the ALJ's conclusory reasons for rejecting a treating nurse practitioner's opinion, without offering an explanation or citations to the record, was insufficient and prevented the Court's ability to conduct proper judicial review). The ALJ should have identified the specific findings he found unremarkable and explained why they did not support LMSW Wagner's opinion. *See Sutherland v. Barnhart*, 322 F.Supp.2d 282, 289 (E.D.N.Y. 2004) ("It is not proper for the ALJ to simply pick and choose from the transcript only such evidence that supports his determination, without affording consideration to evidence supporting the plaintiff's claims."); *see also Nix v.*

*Astrue*, 2009 WL 3429616, at *6 (W.D.N.Y. Oct. 22, 2009) (noting that "an ALJ . . . may not ignore an entire line of evidence that is contrary to [his] findings") (internal quotation marks omitted).  Failure to do so makes it difficult for this Court to conduct a meaningful review.


## CONCLUSION

For the above reasons, Plaintiff's motion for judgment on the pleadings (Dkt. No. 12) is granted, defendant's motion for judgment on the pleadings (Dkt. No. 13) is denied, and the case is remanded for further administrative proceedings.

The Clerk of Court shall take all steps necessary to close this case.

**SO ORDERED.**

Dated:      September 17, 2021
            Buffalo, New York

MICHAEL J. ROEMER
United States Magistrate Judge